**MASON et al. v. WOODS, Housing Expediter.**

**No. 484.**

United States Emergency Court of Appeals.
Heard at New York City Jan. 29, 1949.

Decided Feb. 16, 1949.

**358**

Eugene Blanc, Jr., of New York City, for complainants.

Lloyd Weisberger, of Washington, D. C. (Ed Dupree, General Counsel, J. Walter White, Asst. General Counsel, Field Liaison and Appeals Branch, and Charles P. Liff, Chief, Appeals Section, all of the Office of the Housing Expediter, all of Washington, D. C., on the brief), for respondent.

Before MARIS, Chief Judge, and MAGRUDER and McALLISTER, Judges.

MAGRUDER, Judge.

On September 29, 1948, complainants, as executors under the will of Theodorus Bailey, deceased, filed the present complaint under § 204(a) of the Emergency Price Control Act, as amended, 50 U.S.C.A. Appendix, § 924(a), claiming to be aggrieved by an order of the Housing Expediter issued August 30, 1948, denying (except for a minor adjustment) a protest which had been filed by Bailey in June, 1947. Bailey died on September 25, 1947, while the protest proceedings were pending.

For many years Bailey had been the owner of a house located at 137 W. 82nd Street, New York City, which, prior to December, 1944, he had operated as a rooming house. He remodeled the premises into an apart-ment house, with ten dwelling units, the maximum rents of nine of which are involved in the complaint now before us. These newly created housing accommodations were first rented at various dates in February, March, April and May of 1945, after the effective date of the Rent Regulation for Housing in the New York City Defense-Rental Area (8 F.R. 13914, 11 F.R. 4016). Hence, under § 4(e) of the Rent Regulation, the first rents charged by the landlord for these apartments became the lawful maximum rents, subject, however, to subsequent reduction by the Administrator, or his area rent director, by proceedings under § 5(c) of the Rent Regulation. The downward adjustment so provided was on the basis of the rent generally prevailing in the defense-rental area for comparable housing accommodations on the maximum rent date (here, March 1, 1943), with appropriate allowance, in cases like the present involving construction, to reflect general increases in costs of construction in the area since the maximum rent date.

It was obviously necessary to establish a speedy procedure for reducing all such self-determined "first rents" which were out of line, in order to eliminate discrimination against landlords whose rents were frozen as of the maximum rent date, and otherwise to effectuate the purposes of the Act. Therefore, the Rent Regulation required, in § 4(e), that within thirty days after so renting "the landlord shall register the accommodations as provided in section 7." Such registration consisted, as stated in § 7, of filing in the area rent office a registration statement, on a form provided for this purpose, which "shall identify each dwelling unit and shall specify the maximum rent provided by this regulation for such dwelling unit and shall contain such other information as the Administrator shall require." In cases where a proper registration statement was timely filed, the area rent director received prompt information of the new renting and thus might speedily proceed to review the first rent to determine whether it ought to be reduced under the applicable standard. In such case, any order by the area rent director reducing the maximum rent operated prospectively only.

If, on the other hand, the landlord failed to file a proper registration statement within the time specified, he ought not to gain by his own default. Therefore, § 4(e) of the Rent Regulation, as amended (10 F.R. 2404), provided that if the landlord should fail "to file a proper registration statement within the time specified", the self-determined rent received by the landlord "shall be received subject to refund to the tenant of any amount in excess of the maximum rent which may later be fixed by an order under section 5(c) (1)." The subsection also provided that if the Administrator "finds that the landlord was not at fault in failing to file a proper registration statement within the time specified, the order under section 5(c) (1) may relieve the landlord of the duty to refund." In addition, by way of self-limitation upon the administrative power to order a refund, the subsection provided that where a proper registration is eventually filed, though not on time, "the landlord shall have the duty to refund only if the order under section 5(c) (1) is issued in a proceeding commenced by the Administrator within three months after the date of filing of such registration statement."

After the landlord in the case at bar filed his registration statements for the nine apartments in question, the Area Rent Director, on July 28, 1945, served notice of a proceeding under § 5(c) (1) for the reduction of the "first rents" to levels set forth in an attached schedule. This proceeding resulted in nine separate orders by the Area Rent Director, issued June 26, 1946, making reductions in amounts ranging from 10 to 15 per cent, much smaller reductions than he had originally proposed. As to seven of the apartments, the Area Rent Director found that the landlord had failed to file timely registration statements, and therefore he directed that the reductions be made retroactive to the respective dates of first renting and ordered refunds to the respective tenants of the amounts which had theretofore been collected by the landlord in excess of the reduced maximum rents so established.[1] These orders were affirmed by the Regional Administrator, on petitions for review; and thereafter the landlord, in June, 1947, filed his formal protest against the reduction orders.

The protest was considered by a Board of Review. The Board recommended that the action of the Area Rent Director should be upheld, except as to minor adjustments upward, amounting to $6.50 per month in the aggregate for the nine apartments. The Housing Expediter, by order issued August 30, 1948, recited that he had independently considered the entire record, as well as the report of the Board of Review, and "finds that he is in substantial agreement with the findings and recommendations of the said Board"; and he therefore granted the protest to the limited extent indicated and in all other respects denied the same.

We shall first consider whether the facts appearing in the record warranted reductions in the "first rents", under the applicable standards set forth in the regulation. On a factual issue of this sort, the scope of our review is narrow. We cannot set aside the administrative determinations as being "arbitrary or capricious" if there is substantial evidence to support them. Rabkin v. Bowles, Em.App.1944, 143 F.2d 600.

The Board of Review, and the Housing Expediter, relied upon an affidavit submitted by a Rent Inspector employed in the Area Rent Office. This they were at liberty to do if the inspector was qualified as an expert in the matters upon which he professed to express an expert judgment. Rabkin v. Bowles, supra, 143 F.2d at page 601. Complainants attack the expert qualifications of this inspector, but such attack cannot be sustained. It appears that prior to his employment in the Area Rent Office the Rent Inspector had had experience as a real estate broker in the Borough of Manhattan. Prior to the time he inspected complainants' housing accommodations now in

---

[1] The landlord did not comply with this refund order, and the Administrator, in April, 1947, commenced an enforcement action against him in the U. S. District Court for the Southern District of New York. By virtue of the pendency of this enforcement suit, the Emergency Court of Appeals has jurisdiction of the present complaint under the saving provision of § 1(b) of the Emergency Price Control Act, as amended, 50 U.S.C.A. Appendix, § 901(b).

question, together with other housing units he believed to be comparable, the inspector had had two and one-half years of experience in the Area Rent Office, and in the course of such employment he had made "innumerable studies of the housing units registered with the Area Rent Office" and had "rendered many opinions regarding comparable rents and rental values which have been relied upon by the Area Rent Director in disposing of rent adjustment cases."

■ This Rent Inspector made what is conceded to be a "painstaking analysis" of each of the nine apartments in question, and compared their "first rents" with the rents prevailing on the freeze date for various other apartments in the area believed to be comparable. As this court said in Sirianni v. Bowles, Em.App.1945, 148 F.2d.343, 344: "Two accommodations are 'comparable' if they are sufficiently similar to be regarded by an expert as of substantially equal rental value. Two accommodations may also be 'comparable', for present purposes, if they are sufficiently similar so that an expert, taking as a standard the rent prevailing for one, and making allowances for such differences as would be reflected in rental value, would be able to determine the appropriate corresponding rent for the other." In his affidavit, the Rent Inspector listed the differences between each of complainants' apartments and the respective comparable units which would be reflected in rental value, some of the differences being listed as in favor of the subject apartment and others in favor of the comparable unit. The inspector also computed the allowance which should be made on account of increased construction costs since the maximum rent date, a computation which complainants have not challenged. Finally, the inspector gave his expert opinion as to the appropriate maximum rents for the nine apartments in question, under the standards laid down in the regulation, "based upon the studies outlined above and on the outlined differences that exist between each Subject unit and its relating comparable accommodations, making all due allowances for the general increases in cost of construction in the area attributable to each unit since March 1, 1943". The maximum rents which the Rent Inspector recommended for complainants' nine apartments, even excluding the allowance for increased cost of construction, were in each case considerably higher than the rents for comparable units prevailing on the freeze date, from which it is apparent that the inspector in fact made allowances for the rental value differences between the subject units and their respective comparable accommodations.

Complainants submitted in the protest proceedings an affidavit of their own expert which, after considerable argumentation as to the respective expert qualifications of himself and the Rent Inspector, and after making statements of a rather generalized character, concluded with the expression of an expert opinion that the "first rents" charged by the landlord for the nine apartments in question were proper under the standards laid down in the regulation. The Board of Review, in its report to the Housing Expediter, gave in detail its reasons for attaching greater probative weight to the affidavit of the Rent Inspector.

■ From a careful review of the whole record we are unable to conclude that the factual determinations of the Board of Review, and of the Housing Expediter, were "arbitrary or capricious" or lacking in evidentiary support.

There remains only the question whether the Area Rent Director was justified in making the rent reductions retroactive to the date of first renting in his orders covering seven of the nine apartments. In any possible view of the evidence, the registration statements for apartments 2A, 4A, and 3B were filed late, and complainants have offered no explanation from which it might be found that the landlord was "not at fault in failing to file a proper registration statement within the time specified". It is necessary, however, to state more fully the facts relating to apartments 1A, 3A, 5A, and 1B, all of which were first rented on April 1, 1945.

■ An affidavit by Barbara Mason recites that on April 16, 1945, she, as agent for the landlord, mailed to the Area Rent Office the registration statements covering the four apartments just mentioned. These registration statements were date-stamped

May 5, 1945, at the Area Rent Office. According to an affidavit by an employee of the Area Rent Office, the office procedure was that when registrations were received from the incoming mail desk they were stamped the hour they were received. In Revised Procedural Regulation 3, as amended (12 F.R. 1143), which was applicable to these proceedings, it was provided in § 1300.262 that a registration statement "shall be deemed filed on the date received by said office unless otherwise provided in such maximum rent regulation or in this regulation: Provided, That any such * * * registration statement * * * properly addressed to and received by said office shall be deemed filed on the date of the postmark." The Area Rent Office should therefore have preserved the envelope in which the registration statements were contained, in order that the date of the postmark thereon might be established. This apparently was not done; at any rate the Area Rent Office was unable to produce such envelope despite repeated requests by complainants for its production. Under these circumstances we are bound to accept as true the statement in the Mason affidavit to the effect that the registration statements, properly addressed to the Area Rent Office, were mailed by her on April 16, 1945. By virtue of the provision of Revised Procedural Regulation 3, above quoted, these registration statements must be deemed to have been filed on April 16, 1945, within thirty days after the first renting of the four apartments in question. If they were "proper" registration statements, then the landlord fully complied with the reporting requirement of § 4(e) of the Rent Regulation, and the rent reduction orders with respect thereto should not have been made retroactive.

■ But these four registration statements, which were first filed on April 16, 1945, were all defective in a material particular in that they all failed to contain one item of information clearly required by the printed form supplied by the Area Rent Office, namely, the date on which the apartment was first rented. They all had to be returned to the landlord for correction. The registration statements, corrected in this particular, were again filed with the Area Rent Office on May 11, 1945 (or possibly on May 8, it does not matter which).

A registration statement containing some minor, insignificant error might well, notwithstanding that, be deemed to be a "proper registration statement" within the meaning of the regulation. But the date on which the housing accommodation was first rented was one of the essential items of information required by the printed form, without which the area rent director could not proceed with his administrative duties under the regulation. If he was not informed of the date on which the housing unit was first rented, he would be unable to tell whether a proper registration statement had been filed within the thirty-day period prescribed in the regulation. He could not tell, therefore, whether the case was one possibly calling for a retroactive rent reduction order, in which case he would have to initiate proceedings under § 5(c) within three months after the filing of a tardy registration statement. Hence, the aforesaid omission in the four registration statements cannot be deemed merely minor or insignificant. We agree with the conclusion of the Board of Review that "on May 11, 1945, proper registration statements were filed by the protestant for the first time with the Area Rent Office." No explanation has been offered by complainants from which it could be found that the landlord was not "at fault" in omitting this essential information from the registration statements as first filed.

Our conclusion, on this branch of the case, is, that the rent reduction orders were properly made retroactive to the date of the first renting and that the landlord was properly required in such orders to make refunds to the respective tenants.

A judgment will be entered dismissing the complaint.