**In re PETERSON'S MOTOR EXP., Inc.**

No. 4926.

United States District Court
D. New Hampshire.

April 5, 1949.

Hale & Dorr, C. Keefe Hurley, Carl H. Amon, Jr., Boston, Mass., Leo V. Concannon, Boston, Mass., John F. Beamis, Jr., Somersworth, N. H., for debtor.

Samuel A. Margolis, Manchester, N. H., Louis E. Wyman, Manchester, N. H., Joseph E. Levine, Boston, Mass., for Goldfarb.

CONNOR, District Judge.

This proceeding was filed May 27, 1948, as a debtor's petition, and was signed by Henry F. Reddington, who purported to be the treasurer of the corporation, and who claimed authorization to so act by virtue of a special meeting of the board of directors thereof held May 18, 1948, at Windham, New Hampshire. On the same date a motion was made for the appointment of a trustee, and thereupon an order was issued approving the debtor's petition and appointing a trustee. Thereafter, on June 10, 1948, one Joseph G. Goldfarb filed a motion as a creditor of Peterson's Motor Express, Inc., wherein he moves that the proceedings for reorganization of said corporation be dismissed, alleging that the petition does not comply with the requirements of Chapter 10 of the Bankruptcy Act, 11 U.S.C.A. § 501 et seq.; that the corporation is solvent and able to pay its debts as they mature; that there is no need of corporate reorganization under Chapter 10; that the petition was not filed in good faith; and that the proceedings in reorganization are unwarranted and will cause serious and irreparable damage to the corporation. Upon these pleadings, several hearings were had, with full opportunity given counsel to litigate the questions raised thereby. Much extraneous evidence was introduced upon the claim that collateral matters would have to be explored in order that the real issues be fully presented. Upon petition of the trustee for authority to employ an accountant, such was authorized, and a certified public accountant examined the accounts of the corporation, final report thereon being delayed because of various difficulties.

The Peterson Motor Express, Inc., is a corporation engaged in the motor trucking and express business, and negotiations for its purchase were entered into by Henry F. Reddington sometime during the year 1946. The corporate structure consists of 500 shares of common stock without par value and 100 shares of preferred stock with par value of $100, of which are issued and outstanding 200 shares of common stock and 10 shares of preferred stock, then owned by the Peterson family. Lacking sufficient funds to acquire the stock, Reddington consulted with one Isadore Goldfarb, of Boston, for financial aid to consummate this purchase. It appears that Goldfarb was in the business of lending money and upon previous occasions had made loans to Reddington. Under the arrangement entered into with Goldfarb, Reddington, in his position as president and treasurer, executed a note and a bill of sale to Goldfarb of all the physical property of the corporation and the Certificate of Public Necessity issued by the Interstate Commerce Commission, and Goldfarb in turn executed a conditional bill of sale to the corporation. The actual consideration received by Peterson's Motor Express, Inc., was $35,000, but the note and bill of sale were in the sum of $42,000, which Reddington signed as an officer of the corporation and in his individual capacity. As additional security Goldfarb required that the stock of the corporation be assigned to him and that Reddington and the other officers execute their undated resignations, which were to be held by him. In addition to this obligation, on December 6, 1946, a mortgage was entered into between the corporation and the Petersons and a note executed in the sum of $11,000 to secure a balance unpaid, and the Petersons retained possession of the stock certificates as further security. The certificates which Reddington assigned in blank are not certificates duly authorized by the corporation, and do not bear the impression of the original seal of the corporation, but are spurious, and were issued by Reddington in his capacity as president and treasurer to himself, and

then assigned as demanded. Under the terms of the loan, the corporation was to pay Goldfarb the sum of $420 per week, on a plan which would liquidate the loan in approximately one hundred weeks. On January 13, 1947 two conferences were held in Boston concerning the financial arrangements which existed between Reddington and Goldfarb. Reddington was engaged in other enterprises and was indebted to Goldfarb for a large sum of money, but this is important only so far as it may explain the conduct of the parties or fix dates. It is the claim of Reddington that on that day he paid the balance due on the Peterson's Inc. note, a sum approximating $34,000, to Goldfarb, and that an adjustment was entered into relative to the interest. Offered in evidence was a bill of sale allegedly executed by Goldfarb, which undertook to convey to the corporation all of the trucks which had been the subject matter of the original dealings of the parties. It appears that the business of the corporation from the time the Peterson interest terminated was carried on by Reddington, and a weekly payment of $420 was forwarded by his direction to Goldfarb, payments continuing until some time in May, when they ceased. The purpose of the payments on and after January 13, 1947, and the cause of their termination are in serious dispute, as likewise is the claimed payment of $34,000. The stock which was the subject of the assignment, and the note which the corporation and Reddington executed were not then returned to him and are yet unreturned. It is his claim that the payments made subsequent thereto were on an account which was independent of the present controversy, and his failure to continue was due to the fact that Goldfarb refused to return his stock and note. Shortly thereafter, Goldfarb attempted to take possession under his conditional bill of sale, but found the mortgage which had been executed by the corporation to the Petersons, and arrangements were made with the movant, a son of Isadore, to have it assigned to him, he paying what was then due. Goldfarb took possession and control of the corporation, apparently in the belief that he was so entitled by virtue of the stock which he held through the foregoing assignment, and caused to be elected a new set of officers. After considerable delay, the accountant filed a report covering his examination, which consists of a balance sheet as of May 27, 1948, the date of the filing of the petition, and a balance sheet as of December 31, 1948, together with statements of profit and loss, summary of cash transactions, and various schedules, and his comments, wherein he states that he found the records in a very incomplete state. His balance sheet as of May 27, 1948, indicates that the corporation was solvent as of that date, with a surplus of $15,778.36. Nowhere in his report is any mention made of the $42,000 note or any payments thereon. The position of Goldfarb is that he is in possession as owner of the corporation as sole stockholder, upon the claim that the obligation for which the stock was assigned not having been met, entitles him to such ownership. The contention of the debtor is that the stock under which Goldfarb asserts his claim and right is of no validity, in that it was issued and assigned contrary to the laws of the State of New Hampshire and the by-laws of the corporation. It further contends that even if it could be held to be a valid transaction, it was not the property of Goldfarb, but should be returned to Reddington because the note was paid on January 13, 1947. The objecting creditor takes the position that Reddington was without authority in filing this petition for the corporation as he was unauthorized by vote of the legally elected directors to undertake such action.

■■■ Under Chapter 10 and upon the foregoing are posed two questions: Was the corporation on May 27, 1948, insolvent or unable to meet its debts as they matured; and, Is the petition brought by one duly authorized to bring such petition. The burden of establishing proof under these issues is upon the petitioner, and, to maintain the petition, both must be established by adequate proof to satisfy the court that the petition is within the purview of Chapter 10. Whatever the formal defects in the petition, it would seem that such have been cured by the evidence offered. Moreover, this being an

equity proceeding, some latitude is permitted. The status of both the petition and the motion must be decided on the evidence which has been offered. While the accountant's report is to receive full consideration in passing upon the issues, it need not be accepted as conclusive evidence of the financial condition of the corporation. Goldfarb maintains that a major portion of the note of $42,000 remains unpaid and is due and outstanding from the corporation. If this liability is added to that of the balance sheet reported by the accountant, then the liabilities clearly would exceed the assets of the corporation and preclude it from meeting its debts as they mature. Indeed, he as a creditor has possessed himself of the corporation and its assets because it was unable to meet this debt at maturity. A more apt situation within the statute could be hardly suggested, and it appearing that this item has not been liquidated during the period of Goldfarb's control, establishes the corporation's continuing inability at the time of the filing of this petition. The contention of the note holder that he is unpaid must be treated as a disputed claim. Under the Act there is neither the necessity nor authority for this court in the present pleading to determine the validity of the claim, which is a matter within the province of the trustee, he to decide in the first instance whether it should be allowed or objected to.

It is the movant's contention that the petition was brought by one not so authorized, and, for that reason, should be dismissed. This claim may not be maintained. The stock which bore the assignment of Reddington and delivered to Goldfarb was not the stock of the corporation, title to which was unaffected by such endorsement and delivery. The evidence permits at most a finding that Reddington pledged the stock as security and had no intention of divesting himself of title in this or in the real stock. Even if he had so intended, and was dealing with valid certificates, he would be precluded by both the New Hampshire statute relating to business corporations, R.L., Chapter 274, § 55, and by the articles of agreement and the by-laws of the corporation. Whatever

the equitable rights acquired thereunder by Goldfarb, either in the real or in the spurious stock, the legal title to the former remains in Reddington. For the purpose of filing these proceedings, he can, in his capacity as an officer of the corporation with authority granted to him by the board of directors, legally act. It is my conclusion that in bringing this petition the essential requirements have been met, and the jurisdiction and relief under Chapter 10 have been properly invoked.

The motion of Joseph G. Goldfarb is denied.