## ALBRIGHT v. NELSON et al.
### Civ. No. 2985.

United States District Court
D. Minnesota, Fourth Division.
Dec. 1, 1949.

Robert L. Speeter, of Minneapolis, Minnesota, appeared in behalf of the plaintiff.

Harry E. Ryan, of Minneapolis, Minnesota, appeared in behalf of the defendants.

NORDBYE, Chief Judge.

Plaintiff rented the upper duplex at 2816 Fifth Avenue South, Minneapolis, from the defendants, and since December, 1947, and up to April, 1949, he has paid a monthly rental for said premises in the sum of $50. Since January 20, 1943, the maximum rental for the upper duplex established by the Office of the Housing Expediter, Minneapolis Area Rent Office, has been $29 per month. This is evidenced by the order of

the Rent Office of that date increasing the maximum rent from $25 to $29 per month. The original registration is missing from the files of the Rent Office, but the order promulgated by that office as of January 20, 1943, has never been vacated or modified and hence must be considered as the order which establishes the maximum rental for these premises. It is conceded that plaintiff has paid $50 per month as rental for the upper duplex each and every month during the year immediately preceding the commencement of this action. Plaintiff has limited his claim to the one-year period. He sues for $252 as overcharges and requests recovery at three times that amount, or $756, together with reasonable attorneys' fees and court costs.

There are presented three questions: (1) Does the Court have jurisdiction when the amount sued for does not exceed $3,000, exclusive of interest and costs? (2) Is there evidence sufficient to sustain defendants' counterclaim in the sum of $500? (3) Have defendants sustained the defense that the overcharge collected was neither willful nor the result of their failure to take practicable precautions against the occurrence of such violations?

Defendants have moved for a dismissal of the action upon the grounds that this Court lacks jurisdiction, relying on Fields v. Washington, 3 Cir., 173 F.2d 701; McCrae v. Johnson, D.C.Md. 84 F.Supp. 230; Kuffel v. Pfeiffer, (D.C.N.D.)[1] Civil No. 1833, decided by Judge Vogel, September 21, 1949. Plaintiff in opposing the motion relies on Adler v. Northern Hotel Co., 7 Cir., 175 F.2d 619; Adams v. Backlund, D.C.Neb., 81 F.Supp. 643; Hartke v. Pace, (D.C.E.D.Mo.)[1] Civil No. 6460, decided by Judge Hulen; Clarke v. Gorchow,[1] (D.C. N.D.Ia.) decided by Judge Graven, August 15, 1949; Gagnon v. Markuson, (D.C. Minn.)[1] Civil No. 3083, decided by Judge Joyce, October 10, 1949.

The cases denying jurisdiction apply to Section 205 of the Housing and Rent Act of 1947, 50 U.S.C.A.Appendix, § 1895, a strict and literal interpretation when a tenant brings an action in Federal Court against his landlord to recover rental overcharges. The section, which pertains to the right of a tenant to recover damages for rental payments exceeding the maximum rent, reads in part: " * * * Suit to recover such amount may be brought in any Federal, State, or Territorial court of competent jurisdiction within one year after the date of such violation."

It is urged that Congress having used the term "Federal * * * court of competent jurisdiction", it necessarily follows that the "competency" of a Federal District Court to entertain such a suit by a tenant must be based upon some other statutory grant of jurisdiction over the subject matter and the parties. In Fields v. Washington, supra, the only statutory grant of jurisdiction over the subject matter was found in Section 1331, Title 28 U.S.C.A., which requires that the matter in controversy should exceed the sum or value of $3,000, exclusive of interest and costs, and which arises under the laws of the United States. In view of the want of pecuniary jurisdiction, a dismissal was granted. The courts denying jurisdiction further emphasize the difference between Section 205 of the Emergency Price Control Act of 1942, 50 U.S.C.A.Appendix, § 925, and Section 205 of the Housing and Rent Act of 1947 because Section 205(c) of the former act, after vesting exclusive jurisdiction of criminal proceedings in the District Courts, granted to the District Courts concurrent jurisdiction with the State and Territorial Courts of "all other proceedings under section 205 of this Act." There is an absence of any such language granting jurisdiction in the 1947 Act.

But if the courts are to seek a result which seems to be consonant with the intention of Congress and avoid, if possible, a construction contrary to the spirit of the Act, due regard must be given both to the literal language used in the pertinent legislation and to all other relevant matters which will aid in giving vitality to the legislative intent. Congress, of course, could vest in the Federal courts jurisdiction of actions for over-ceiling rent regardless of

I. No opinion for publication.

the amount involved. No good reason is suggested why the courts in construing Section 205 of the 1947 Act should construe the words "competent jurisdiction" narrowly and thereby assume that Congress intended to depart from the policy adopted since 1942 for aiding the enforcement of the Rent Control Acts. Moreover, as used in the 1947 Act, these words modify not only the word "Federal" but "State, or Territorial" as well. Many State Courts, as well as some Federal Courts, undoubtedly would not be competent to entertain jurisdiction of a claim for over-ceiling rent. That is, a State Probate Court with jurisdiction limited to the administration of estates would not be, under the Act, a court of competent jurisdiction. The United States Court of Claims and the Federal Appellate Courts likewise would fall into the category of courts which are not of original "competent jurisdiction." As illustrative of the intention of Congress in using the words "competent jurisdiction" in Section 205 of the 1947 Act, reference may be made to another portion of this Act where the Housing Expediter is vested with jurisdiction to institute injunctive proceedings. Section 206(b) of the Act provides that he "may make application to any Federal, State, or Territorial court of competent jurisdiction." 50 U.S.C.A.Appendix, § 1896(b). The right of the Housing Expediter to invoke the jurisdiction of the Federal Courts is not dependent upon the amount involved in the controversy, and it seems reasonable to conclude, therefore, that the words "any * * * court of competent jurisdiction" are used in the same sense in Section 205 as they are used in Section 206.(b) of the Act. That is, proceedings may be initiated by the tenant as well as the Housing Expediter in any Federal Court where venue jurisdiction exists. In construing Section 205, due regard must be given to the entire Act so as to harmonize, if possible, all parts thereof.

Admittedly, the grant of jurisdiction to Federal Courts of all claims of over-ceiling rent regardless of the amount involved may appear to be more clearly embraced in the 1942 Act than in the 1947 Act. But the rather sweeping language which granted jurisdiction to Federal Courts in the 1942 Act was not designed explicitly to grant jurisdiction in the recovery of over-ceiling rent claims. As Judge Duffy pointed out in his concurring opinion in Adler v. Northern Hotel Company, supra, that language as it appears in Section 205(c) of the 1942 Act was contained in the Act as it was passed by the House of Representatives when no right whatsoever was given to the tenant to recover damages. The bill at that time contained only injunctive and criminal remedies, as to which there was no question concerning the jurisdiction of the Federal Courts in the Judicial Code. Consequently, as Judge Duffy observed 175 F.2d at page 622: " * * * Sec. 205(c) could not have been inserted for the purpose merely of granting federal jurisdiction. Rather it was intended to distinguish the jurisdiction of criminal cases, which was exclusively federal, from the jurisdiction of civil cases, which was concurrently State and federal. When the criminal sanctions were eliminated in the 1947 Act, it might have well appeared to Congress that no necessity to retain Sec. 205(c) in its previous form remained, in view of the language authorizing that tenant damage suits could be brought in any federal, State or territorial court of competent jurisdiction."

Obviously, therefore, effect must be given to all the language which Congress used in the 1942 Act to vest jurisdiction in the courts over actions by tenants against landlords for over-ceiling rents. Section 205 (e) of that Act provides that "Any action under this subsection by either the buyer or the Administrator, as the case may be, may be brought in any court of competent jurisdiction." This language is comparable to the language which exists in the 1947 Act. It will be remembered that the term "buyer" under the 1942 Act included a person who paid an amount for rent which exceeded the applicable ceiling.

It is well known that a large number of actions were brought by tenants under the 1942 Act. The decisions under that Act overwhelmingly establish jurisdiction of the Federal Courts over actions by tenants re-

gardless of the amount involved. The very purpose for granting tenants the right to recover over-ceiling rents, with treble damages, from landlords was prompted by the fact that the Administrator would be unable to police the enforcement of an Act which was exceedingly essential to the general welfare, nation-wide in its scope, and subject to many ramifications. The aid of the tenants was enlisted for the express purpose of promoting the enforcement of the Act. No change in the policy of Congress in that regard was manifested in the enactment of the 1947 Act. The same problems existed under both Acts with reference to the enforcement of rent control. Indeed, it would be a mere gesture for Congress to assume to confer any jurisdiction upon Federal Courts in the policing of rent violations by the tenant if the proposed limitation of jurisdiction were read into the Act. Very few over-ceiling rent actions would aggregate $3,000, exclusive of interest and costs, and the result would be that State Courts, many of them over-crowded and not interested primarily in the enforcement of Federal laws, would be called upon to perform, perforce, the almost exclusive duty of aiding in the enforcement of a Federal Act. It is significant that the Act recognizes that liquidated damages may be as small a sum as $50. Such a provision tends to sustain the view that Congress intended that Federal Courts could entertain such suits regardless of the amount.

The argument is advanced that Congress intentionally limited the jurisdiction of Federal Courts under the 1947 Act in order to relieve them of the many small claims which would have to be tried and which could be more properly tried in the State Courts where jurisdiction is not dependent upon the amount involved. But that argument does not seem sound in view of the amendatory legislation passed by Congress in the 1949 Act. Provision is made in that Act for the United States to institute actions for recovery if the persons from whom over-ceiling rent is accepted fail to do so within thirty days of the occurrence of the violation, or are not entitled for any reason to bring the actions. All actions instituted by the United States would be lodged in Federal Courts regardless of the amount involved in such amendatory legislation certainly does not disclose any intention of Congress to free the Federal Courts of the smaller claims arising under the Housing and Rent Act. It is not persuasive to suggest that in proceedings under this Act Congress intended to impose the burden upon State Courts to try all of the small claims thereunder and favor the Federal Courts so that they could be called upon only to handle the relatively few large claims which might be enforced.

Not only does the amendatory legislation affecting the 1947 Act throw light upon the intention of Congress, but reference may be made to Senate Report No. 127, 1st Session, 80th Congress, U. S. Cong. Service, 1949, p. 351, where the 1949 Housing and Rent Act is reported by the Committee and where the jurisdiction of the Federal Courts under Section 205 is referred to as being concurrent with that of the State and Territorial Courts. The 1949 Act retains the same phraseology and wording with reference to the jurisdiction of Federal, State, and Territorial Courts as is found in the 1947 Act. It would seem that, according due consideration to all relevant factors and avoiding a literal and strict interpretation which seems contrary to the whole objective of the Rent Control Act, a broad and liberal interpretation should be given to the language used in the 1947 Act and jurisdiction should be upheld on the grounds that, when Congress used the term "Federal * * * court of competent jurisdiction", it had reference to Federal District Courts which would have jurisdiction of the parties and that Congress intended to give such courts jurisdiction of the subject matter regardless of the amount involved because the proceedings arise under a Federal statute. And in view of the fact that there is an absence of any expression in the 1947 Act which indicates any policy by Congress to depart from the plan and scheme of enforcement which had existed for some five years and which had proved to be reasonably effective, the more reasonable view justifies an interpretation which will uphold jurisdiction in this proceeding. The motion to dismiss is denied.

■ This brings me to the question of the counterclaim. Little need be said in this regard. Defendants claim that during the tenancy of this plaintiff, they extended various courtesies to him, such as affording him transportation in their car from the premises to or near the place of his employment, and numerous other acts of hospitality and consideration are referred to which they bestowed upon plaintiff and his family. They seek to recover by way of a counterclaim the sum of $500 for such services and kindness. But, obviously, there was no intention on the part of defendants to accept or to expect any monetary consideration for whatever was done in that regard. It clearly appears that during this period a friendly relationship existed between the tenant and the landlord, and that such acts were extended by defendants as a mere gesture of friendship. Defendants occupied the lower duplex. There was no express or implied promise to pay, nor was there any intention on the part of the defendants ever to exact any remuneration for that which was done. The counterclaim is a sheer afterthought and without merit.

■ The last question involves the issue as to whether defendants have sustained the burden of proof in establishing that their violation of the Act was neither willful nor the result of any failure to exercise practicable precautions to avoid the same. These defendants are working people and appear to be persons quite inexperienced in the problems of property management. When they purchased this duplex, they made no inquiry as to rent control and both plaintiff and defendants were ignorant of the law as to whether this particular property was subject to rent control. Plaintiff was their first tenant. I am quite clear from the evidence that when the defendants agreed upon the amount with the plaintiff, they were not aware that the sum agreed upon was in violation of any rent ceiling. Due regard must be accorded to their inexperience in these matters. There is some testimony that a few months before this action was brought, the plaintiff called to the defendants' attention that he had been to the Rent Control Office

and for the first time learned that the rental was $29 per month. He contends that there was a response on the part of Mrs. Nelson that she had heard or learned that the ceiling was $35 rather than $29 per month. This conversation was not confirmed by defendants. I am inclined to give them the benefit of the doubt when they say that they did not make any visit to the Rent Office until shortly before this action was commenced, and it appears that since they learned that the rent ceiling was $29, they have not collected from plaintiff any sum in excess of that amount. The entire picture as disclosed by the evidence sustains the finding that the violation was neither willful nor the result of defendants' failure to take practicable precautions against the occurrence of such violation, and I so find.

The above may be considered as my findings of fact, and as conclusions of law I find that plaintiff is entitled to judgment against defendants, and each of them, in the sum of $252, together with the sum of $75 attorneys' fees and the costs of this action. Judgment may be entered accordingly. It is so ordered.

An exception is allowed.