**LANDES v. BARRETT et al.**

No. 14603.

United States Court of Appeals
Eighth Circuit.

Oct. 28, 1952.

Harry Howard, Kansas City, Mo., for appellant.

Erwin O. Kunau and Donald E. Raymond, Kansas City, Mo., for appellees.

Before SANBORN, WOODROUGH, and COLLET, Circuit Judges.

COLLET, Circuit Judge.

This appeal is from a judgment in favor of tenants in an action brought on their own behalf against a landlord for overcharges in rent collected, for damages, and attorney fees, under the provisions of Sec. 205 of the Housing and Rent Act of 1947,[1] as amended, Title 50 U.S.C.A.Appendix, § 1895. The controversy involves the following facts.

Mrs. Landes, the owner and landlord of the premises involved, located in Kansas City, Missouri, first rented the property from the then owner in 1941 and operated it as rental property. She was then a single woman and occupied a portion of it for her own living quarters, renting the remainder. The property consists of a three-story building with several rooms on each floor. She purchased the property for $4,200.00 in 1943 and remodeled the second floor (which is the only portion of the building now involved) extensively. Prior to the remodeling, the premises involved had been rented as a girls' dormitory, and it appears that its arrangement was such that the rooms on the second floor were best adapted to occupancy independently of each other and were so rented. When the remodeling was done it was planned that, whether designedly so or not, the rooms were so connected by doors and so arranged that they could be thrown together into two groups or apartments, or each room could be used separately. There were two baths, two kitchenettes, four large rooms, suitable by juxtaposition and interior design for either living rooms or bedrooms. The baths were so located that one could be used with one pair of the large rooms, the other with the remaining two large rooms. Or one bath could be made to serve the occupants of three of the large rooms and the other used as a private bath for the fourth. This somewhat ingenious arrangement seems to have been largely responsible for the differences which later arose between Mrs. Landes and the Local Rent Office, finally resulting in charges of confusion hurled at each by the other and a charge in appellant's brief that the tactics of the local Rent Office compare unfavorably to any of the acts coming to her knowledge (dehors the record) from behind the Iron Curtain. We observe in passing that the trial court did not agree that the comparison was fair to the Rent Office, and neither do we. Reference is made to it only to indicate the extent to which appellant urges her charge, which we shall consider later, that subsequent actions of the Rent Office were arbitrary and capricious.

<hr />

[1]. "Any person who demands, accepts, or receives any payment of rent in excess of the maximum rent prescribed under section 204 shall be liable to the person from whom he demands, accepts, or receives such payment for reasonable attorney's fees and costs as determined by the court, plus liquidated damages in the amount of (1) $50, or (2) three times the amount by which the payment or payments demanded, accepted, or received exceeds the maximum rent which could lawfully be demanded, accepted, or received, whichever in either case may be the greater amount; * * *. Suit to recover such amount may be brought in any Federal, State, or Territorial court of competent jurisdiction within one year after the date of such violation. * * * "

After the remodeling was done, appellant registered the remodeled premises in May, 1944, with the Area Rent Office at Kansas City, Missouri, as rooms in a dwelling used as a dormitory for girls. In the fall of 1946 Miss Johnson and Miss Brader rented one group of these rooms, consisting of two large rooms, bath and kitchenette, as an apartment[2] and used it together until in October, 1946, Miss Millsap moved in with them and thereafter the three occupied the apartment at the same rental theretofore charged Misses Johnson and Brader, until June 30, 1947, when Miss Brader moved out. Miss Johnson and Miss Millsap continued to occupy it at the same rate until they moved out in March, 1949. The rent specified by Mrs. Landes in the May, 1944, registration was for the two large rooms separately at a rate of $7.50 each for single occupancy and $9.00 each for double occupancy. The rent charged was $18.00, or the double occupancy rate for each.

In November, 1948, appellant caused the following advertisement to be inserted in the "Want Ad" columns of The Kansas City Star:

"To Rent—Apartments, furnished, Armour-Gillham—lovely 4 rooms, suitable 2-3 adults, no couples. Armour bus. VA. 6383."

Mr. L. M. Barrett and Mr. Byron Jackson answered the advertisement and rented the other group of rooms on the second floor, consisting of two large rooms, bath, kitchen and porch, as an apartment, and occupied it together, as such. The rent specified for that space by Mrs. Landes in the May, 1944, registration was for the two large rooms separately, fixed at $14.00 per week for double occupancy for the large room with private bath and porch (no single occupancy rate was specified therefor), $9.00 per week for double occupancy for the other large room, and $7.50 per week for single occupancy of the latter. The rent charged for the use of both rooms, together with the bath and kitchenette, was $23.00 per week,[3] or the double occupancy rate for both.

Mrs. Landes testified she had a discussion with a representative of the Area Rent Office in February, 1946, about whether it was permissible to rent more than one unit (room) to one or more persons (as apartments) at the rate specified in the May, 1944, registration for the rooms separately, and was assured that such practice was proper and that the Rent Office was interested in the rate and not particularly in the individuals who might use the space. She further testified that in 1946 the propriety of her May, 1944, registration was raised by the Area Rent Office, an investigation was made, and no fault was found with it. There was no contradictory testimony on either subject.

In December, 1948, Mrs. Landes purchased another piece of property in Kansas City. Early in 1949 the Rent Control Office raised some question about the manner in which it was being rented. Mrs. Landes talked to a deputy in the Rent Office about that matter. The property now involved was brought into the conversation. They did not get along well, and she hired an attorney who had previously been an attorney in the Area Rent Control Office. He testified in this case that the matter about which the Rent Office had raised a question was satisfactorily adjusted, but that the subject of the present controversy rapidly developed into an impasse, the Rent Office requesting information concerning it which he was unable to furnish. He further testified that the deputy in the Rent Office asserted that the registration of May, 1944, and the manner of renting the premises were very confusing, charged Mrs. Landes with responsibility for the confusion, and exhibited antagonism toward her. Mrs. Landes in turn charges the Rent Office with responsibility for any confusion that existed. There seems to be little doubt that confusion existed. The record is somewhat imperfect and we are required to draw inferences in some instances from reported

2. Mrs. Landes denies that it was rented as an apartment, but the trial court so found upon adequate evidence.

3. Actually it was $23.10, but the extra 10¢ per week was refunded before this controversy arose and is now of no importance.

facts in order to piece out the true situation. The confusion appears to have resulted from the fact that the premises were registered as separate units of one room each and rented as two apartments. The regulations required that apartments be registered as such. As heretofore stated, the premises could be used either as separate rooms or as two apartments. Several investigations and inspections were made. The Rent Office insisted that the premises be registered as apartments. Several conferences were held between the attorney and representatives of the Rent Office, culminating in Mrs. Landes' refusal to register the premises as apartments. She has never so registered them. Thereafter, on April 4, 1950, the Office of the Housing Expediter, through the local Rent Control Office, issued orders which are the principal subject of attack in the present controversy. They are as follows:

"United States of America

"Office of the Housing Expediter

"Order Determining Maximum Rent[4]

"Stamp of Issuing Office: Office of the Housing Expediter Area Rent Office 2nd Fl. Railway Exchange Bldg. 7th & Walnut, Kansas City, Missouri.

"Concerning (Address of Accommodations) 3531 Locust Kansas City, Missouri (Apartment No.) (Apt. #1 & 2, 2nd Fl. SE) Docket No. VI KC J-45413 CJL:sk

"To: (Name and Address of Landlord) Mrs. Margaret Landes, 3533 Locust Kansas City, Missouri

"Exact copy mailed to Landlord and Tenant on April 4, 1950.

s/ Weiner

"The Rent Director has duly considered the facts involving the above-described housing accommodations, and

"1. [x] Finds that the rent on the date determining the Maximum Rent was $23.10 per week, which amount is the Maximum Rent for the housing accommodations.

"2. [x] The Maximum Rent for the above-described accommodations is hereby fixed at $11.00 per week, the rent which the Rent Director finds was the rent generally prevailing in this Defense-Rental Area for comparable housing accommodations on the Maximum Rent Date. By this order the maximum rent is decreased from $23.10 per week to $11.00 per week under Secs. 5-c-1 and 4-C and 4E of Rent Regulations.

"3. [x] Finds that the services, furniture, furnishings, and equipment, included in the Maximum Rent for the housing accommodations stated in items 1 & 2 above, were

"3 rooms and private bath, furnished, all utilities furnished, no garage, with mechanical refrigerator and cook stove, no janitor service, with garbage disposal.

"[x] This order issued Apr. 4, 1950, and in accordance with the Rent Regulation and the findings of the Rent Director indicated in Item #2 & item 1 above is effective from July 1, 1947 or date first rented thereafter.

"[ ] This order is issued and effective......in accordance with the Rent Regulation and the findings of the Rent Director indicated in item 2 above. Any rent collected from the effective date of this order in excess of the amount provided in the order shall be refunded to the tenant within 30 days from the date of issue.

"James M. Robertson
Area Rent Director

By: /s/ R. F. Jarman
Rent Director.

Copy to: L. M. Barrett
1124 Ward Parkway

CC: Compliance Department

"To: (Name and Address of Tenant)
B. G. Jackson
3531 Locust (#1 & #2)
Kansas City, Missouri"

"United States of America

"Office of the Housing Expediter

"Order Determining Maximum Rent[5]

---

4. The premises referred to in this order were those occupied by Barrett and Jackson.

5. The premises covered by this order were those occupied by Misses Millsap and Johnson.

"Stamp of Issuing Office: Office of the Housing Expediter Area Rent Office 2nd Fl. Railway Exchange Bldg. 7th & Walnut Kansas City, Missouri

"Concerning (Address of Accommodations) 3531 Locust Kansas City, Missouri (Apartment No.) (Rms. #3 & 4 2nd fl. SW & NW) Docket No. VI KC J-45412 CJL:sk

"To: (Name and Address of Landlord) Mrs. Margaret Landes 3533 Locust Kansas City, Missouri

"Exact copy mailed to Landlord and Tenant on April 4, 1950.

"s/ Weiner

"The Rent Director has duly considered the facts involving the above-described housing accommodations and

"1. [x] Finds that the rent on the date determining the Maximum Rent was $18.00 per week, which amount is the Maximum Rent for the housing accommodations.

"2. [x] The Maximum Rent for the above-described accommodations is hereby fixed at $8.50 per week, the rent which the Rent Director finds was the rent generally prevailing in this Defense-Rental Area for comparable housing accommodations on the Maximum Rent Date. By this order the maximum rent is decreased from $18.00 to $8.50 per week under Sec. 5-c-1, 4-C and 4-E of the Rent Regulations.

"3. [x] Finds that the services, furniture, furnishings, and equipment, included in the Maximum Rent for the housing accommodations stated in items 1 & 2 above were

"2 rooms, furnished, all utilities furnished, no linens or dishes furnished, no garage, private bath, with cook stove and mechanical refrigerator, central heating.

"[x] This order issued Apr. 4, 1950, and in accordance with the Rent Regulation and the findings of the Rent Director indicated in Item #2 & item 1 above is effective from July 1, 1947 or the date first rented thereafter.

"[ ] This order is issued and effective......in accordance with the Rent Regulation and the findings of the Rent Director indicated in item 2 above. Any rent collected from the effective date of this order in excess of the amount provided in the order shall be refunded to the tenant within 30 days from the date of issue.

"James M. Robertson
Area Rent Director
By: /s/ R. F. Jarman
Deputy Rent Director.
Copies to: Marjorie Prutzman
1220 E. Armour
Thula Brown, 1220 E. Armour
CC: Compliance Dept.
"To: (Name and Address of Tenant)
Tenant or Occupant
3531 Locust (#3 & #4, 2nd SW & NW)
Kansas City, Missouri"

At the same time an order was issued covering the premises for rental as separate rooms. That order is as follows:

"United States of America—Office of the Housing Expediter

"Order Adjusting Maximum Rent[6]

"Stamp of Issuing Office: Office of the Housing Expediter Area Rent Office 2nd Fl. Railway Exchange Bldg. 7th & Walnut Kansas City, Missouri.

"Concerning (Address of accommodations): 3533 Locust, Kansas City, Missouri.

"(Sleeping rooms) Docket No. VI-KC-I-41969 CJL:jw.

"To: Name and address of Landlord Mrs. Margaret Landes, 3533 Locust, Kansas City, Missouri.

"The Rent Director, after consideration of all the evidence in this matter, has determined that the maximum rent for the above-described accommodations should be adjusted on the grounds stated in Section (s) 5-c-3 of the Rent Regulations.

"Therefore, it is ordered that the maximum rent for the above-described

---

6. It thus appears that the Rent Office undertook to resolve the "confusion" by fixing maximum rents to cover the premises when rented either as apartments or as separate rooms.

housing accommodations be, and it hereby is, changed as per attached schedule.

"This order issued April 4, 1950, and is effective the next rent payment date.

"This order will remain in effect until changed by the Office of the Housing Expediter.

"James M. Robertson,
Area Rent Director,
By R. F. Jarman,
Deputy.

"Exact copy mailed to Landlord and Tenant on April 4, 1950.

"Weiner.

"Schedule Attached to April 4, 1950 Order 41969

"Form Approved Budget Bureau No. 63-R525

"Maximum Rents and Rents Requested for Rooms Rented or Offered for Rent

| Room No. or Description of Unit | Rent | Weekly Rate | |
| --- | --- | --- | --- |
| | | One Person | Two Persons |
| 2nd floor SE #1 | Approved Rent | 6.50 | 7.50 Private bath |
| 2nd floor So. Center #2 | Approved Rent | 6.00 | 7.00 |
| 2nd floor SW #3 | Approved Rent | 6.00 | 7.00 |
| 2nd floor NW #4 | Approved Rent | 6.00 | 7.00 |
| 3rd floor So. Center #2 | Approved Rent | 6.00 | 7.00 |
| 3rd floor SW #2 | Approved Rent | 6.00 | 7.00 |
| 3rd floor NW #3 | Approved Rent | 6.00 | 7.00 |

"This schedule attached to and made a part of this order issued this date.

"James M. Robertson,
Area Rent Director,
By R. F. Jarman,
Deputy.

"Date: April 4, 1950"

After the foregoing orders had been formulated but apparently before they were actually issued, Mrs. Landes and her attorney appeared before the local rental advisory board in an effort to get the proposed order modified, particularly the retroactive feature. He was unsuccessful. He then discussed with Mrs. Landes the advisability of appealing to the Emergency Court of Appeals, but this was not done. She then employed her present attorney, who filed two motions for reconsideration, the first incorporating a request for the reestablishment of the rental rates specified in the May, 1944, registration. Both motions were denied. Thereafter, on September 6, 1950, the present action was filed in the United States District Court in two counts. The first count sought the recovery by Mr. Barrett and Mr. Jackson of the difference between $23.00 per week paid by them from November 25, 1948, until October 1, 1949,

and $11.00 per week for the period, as fixed by the order of April 4, 1950,—$519.-43,[7] prayed that the amount be trebled for wilful refusal to refund it on demand, and that an allowance for attorney fees be added. The second count was for the same relief for Wanda Millsap (Barrett) and Grace Johnson (McGuire), the occupants of the other apartment, for the period from July 1, 1947 (the effective date of the retroactive order of April 4, 1950) to March 25, 1949. The refund claimed was $859.07, the difference between $18.00 per week paid and $8.50 per week fixed by the order of April 4, 1950, trebled, amounting to $2,577.-21, plus attorney fees.

The trial court found for the plaintiffs on both counts, trebled the amounts claimed, allowed an attorney fee of $300.00 on the first count and $400.00 on the second count, and entered judgment accordingly on the first count for $1,858.29, and $2,977.-21 on the second count. This appeal is from that judgment.

Appellant challenged the jurisdiction of the District Court on the ground that each count involved separate causes of action, that in each the amount in dispute was less than $3,000.00, and there was no diversity of citizenship. It is renewed here. The question of jurisdiction has been fully discussed. Many courts of high standing have concluded that under the 1947 Rent Control Act, supra, the United States District Courts do not have jurisdiction in actions brought by tenants, absent diversity of citizenship and the jurisdictional amount. See Fields v. Washington, 3 Cir., 173 F.2d 701; Currie v. Flack, 1 Cir., 190 F.2d 549; Watson v. Gallagher, 6 Cir., 192 F.2d 1017; Burns v. Bishop, D.C.W.D.Ark., 88 F.Supp. 1; Temmerman v. Scafidi, D.C.N.D.Cal., 88 F.Supp. 527; Aram v. Hazelwood Apartments Co., D.C.E.D.Mich., 89 F.Supp. 836; Frisch v. Lopez, D.C.E.D.Pa., 87 F.Supp. 544; Ramseyer v. Contestabile, D.C.E.D.Pa., 86 F.Supp. 104; Hershenrader v. Campbell, D.C.W.D.Ky., 85 F.Supp. 75;

Morozin v. Hausmaninger, D.C.E.D.Pa., 85 F.Supp. 57; McCrae v. Johnson, D.C.D. Md., 84 F.Supp. 220, 221.

Many other courts have reached the opposite conclusion. See Adler v. Northern Hotel Co., 7 Cir., 175 F.2d 619; Meyercheck v. Givens, 7 Cir., 180 F.2d 221; West v. Schwarz, 7 Cir., 182 F.2d 721; Preston v. Leto, 5 Cir., 185 F.2d 1022; Garlin v. Currie, 5 Cir., 185 F.2d 401; Frasher v. Estes, D.C.W.D.Mo., 95 F.Supp. 74; Albright v. Nelson, D.C.D.Minn., 87 F. Supp. 737; Adams v. Backlund, D.C.D. Neb., 81 F.Supp. 643; Kinsey v. Carney, D.C.W.D.Mo., 92 F.Supp. 967; Gutman v. Lawton Estates, D.C.S.D.N.Y., 99 F.Supp. 951; Sampson v. Thomas, D.C.E.D.Mich., 76 F.Supp. 691.

We are impressed with the reasoning of the latter group of cases. It would be needless to repeat it. We are convinced that Congress intended that the United States District Courts should have jurisdiction of cases arising under the 1947 Act [8] regardless of the amount involved and we so hold.

The trial court found that plaintiff had failed to register the premises as furnished apartments in accordance with the requirements of the Housing and Rent Act of 1947 and the regulations thereunder. She contends that such finding was erroneous because the premises were registered in May, 1944, had not been structurally changed since that time, and any new registration could not have furnished any new information. Although she calls attention in that connection to her testimony that someone in the Rent Office told her in effect it would be all right to rent more than one room to the same person, she concedes that "neither the government of the United States nor the Rental Office is bound by this verbal representation," but says that "it is quite persuasive in behalf of appellant and in the ordinary course of affairs she certainly was not remiss in relying upon it."

7. This total was incorrectly stated in the complaint to be $523.76. It was corrected at the time of the trial.

8. "Suit to recover such amount may be brought in any Federal, State, or Territorial court of competent jurisdiction within one year after the date of such violation."

■ Several cases are cited in support of the argument that premises once registered need not be re-registered unless structural changes are made. We need not go into that question. The situation here is simply one where the premises were susceptible to two different kinds of use in May, 1944. The regulations required registration as apartments if they were to be used as such. They were not registered as apartments and never have been. But they were used as apartments and rented as such. Clearly the trial court was justified in making the finding.

Appellant says that the retroactive order of April 4, 1950, was invalid and that the trial court should have so held. It is asserted that a registration is essential before the Area Rent Office can make any orders with respect to the rents and that since there was no registration, no authority existed for making the order. But Sec. 4(c), 24 Code of Federal Regulations 825.4 (c), provides:

"If the landlord fails to file a proper registration statement within the time specified, the rent received for any rental period commencing on or after the date of the first renting shall be received, subject to refund to the tenant of any amount in excess of the maximum rent which may later be fixed by an order under sections 5(c) (1) or 5 (c) (6). Such amount shall be refunded within 30 days after the date of the issuance of the order unless the refund is stayed  *  *  *."

And Sec. 5(d) of the Controlled Housing Rent Regulation, 24 C.F.R., Sec. 825.5 (d), provides:

"If the maximum rent, or any other fact necessary to the determination of the maximum rent, or the living space, services, furniture, furnishings or equipment required to be provided with the accommodations, is in dispute between the landlord and the tenant, or is in doubt, or is not known, the Expediter at any time on his own initiative, may enter an order fixing the maximum rent by determining such fact, *  *  *."

■■ Authority to make the orders was clearly given by the regulations, and neither those regulations nor the orders have been held invalid by the Emergency Court of Appeals, the proper tribunal for determining such questions. Woods v. Stone, 333 U.S. 472, 68 S.Ct. 624, 92 L.Ed. 815. Both were valid. Appellant does not have an opportunity under the regulations to refuse to register the premises for the purposes she uses them and then contend that the Rent Office may not fix proper rentals for the purposes used without that registration.

■■ The orders of April 4, 1950, are assailed on the ground that they are arbitrary, capricious and without due process of law, made without an opportunity for hearing, and void. We need not review the facts in detail or repeat those already related, bearing on the charge that the action of the Rent Office was arbitrary and capricious or without the opportunity for a hearing, further than to direct attention to the fact that a heated dispute arose and continued as to whether a registration was required by the Act and the regulations merely because the premises were rented as apartments when they had been registered as single rooms; that the Act and regulations place apartments and rooming accommodations in different classifications and categories for good and valid reasons; that appellant and her counsel knew this long before the orders were made; that with that knowledge appellant continued to refuse to register the premises as apartments when they were used as such; that she and her counsel were given a hearing and opportunity to present their case, and thereafter the orders were made to cover the use of the premises either way she elected to use them. In so far as the retroactive orders are now involved, they applied to the period during which the premises were rented as apartments without any registration therefor and in our judgment were valid.

■ The claim of want of due process is based upon the hypothesis that the regulations contain a self-imposed limitation

548

upon the Housing Expediter that retroactive orders can only be made in proceedings instituted within three months after a delinquent registration has been filed, that the registration was filed in May, 1944, the proceedings upon which the orders were based were not instituted until six years later and could not therefore constitute a basis for the retroactive orders under the following language of the regulations:

"The landlord shall have the duty to refund only if the order under this section is issued in a proceeding commenced by the Expediter within 3 months after the date of filing of such registration statement."

See Sec. 5(c) (1), 24 C.F.R. Sec. 825.5 (c) (1), and Sec. 4(c), 24 C.F.R. Sec. 825.4 (c).

The reason for this 3-month limitation is explained by the Emergency Court of Appeals in Mason v. Woods, 172 F.2d 857, decided February 16, 1949.

The difficulty with appellant's argument is that she assumes that the May, 1944, registration was the only one necessary and ignores the fact that the required registration for apartments has never been filed. Under those circumstances the period of limitation for instituting the proceedings in which the retroactive orders were made did not commence to run.

■■ We are of the opinion that there is some merit in appellant's claim that treble damages should not have been assessed, but we are cognizant of the well established rule that the discretionary findings of a trial court must not be set aside unless clearly erroneous. Woods v. Western Holding Corp., 8 Cir., 173 F.2d 655; Nee v. Main Street Bank, 8 Cir., 174 F.2d 425; Pendergrass v. New York Life Ins. Co., 8 Cir., 181 F.2d 136. It seems evident that the trial judge, in analyzing the appellant's conduct, reached the conclusion that her refusal to obey the refund orders was prompted by her position that the orders were capricious and unwarranted; and that, since her contention in that regard was not justified by the facts, her action in refusing to make the refunds ordered left the court with no alternative other than to assess treble damages under the applicable statute.

We think that the trial court, under the facts as they appear in the record, was not compelled to award treble damages, amounting, as they do, to more than the original cost of the appellant's premises, and that its conclusion in that regard may properly be attributed to an erroneous view of the law.

The judgment in so far as it awarded the appellees single damages and attorney's fees is affirmed, but in so far as it awarded more than those amounts it is reversed with directions for further proceedings upon that issue not inconsistent with this opinion.

■ A motion has been filed by appellees requesting that the expense of printing a supplement to the record on appeal be taxed against appellant. Our rules provide for the abstracting of the evidence and its reduction to narrative form. The requirement of the rule is relaxed only under exceptional circumstances. It is, among other reasons, for the purpose of minimizing as far as possible the mounting cost of appeals and also the time and labor necessary for a careful review of the record in each case. But we realize that to reduce evidence to narrative form places an additional burden on counsel on appeal. In order not to penalize an appellant for the omission from the record of facts not really material to the determination of the issues presented on appeal by taxing the expense of a supplemental record against appellant under those circumstances, we are hesitant to burden an appellant with such additional expense in doubtful cases. But in this instance appellant omitted reference to testimony bearing upon the issue of whether the premises were rented to appellees as apartments, and then in her brief at page 22 asserts that there was no denial that the rental arrangement was for the rooms separately, beyond the mere assertions of appellees that the respective rentals constituted the rentals of apartments. Under those circumstances the expense of printing the supplemental record will be taxed as costs against appellant.

The motion for an allowance of additional attorney fees on appeal is denied, the fees allowed by the trial court appearing to be adequate in view of all the circumstances.